# Exhibit 1

**EFiled:  Jan 17 2020 04:04PM EST**
**Transaction ID 64635618**
**Case No. 2020-0035-**

# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | |
|---|---|
| **ASCENDA BIOSCIENCES LLC,** ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **C.A. No.** |
| ) | |
| **PERRY LITTLE,** ) | |
| ) | |
| **Defendant.** ) | |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff, Ascenda Biosciences, LLC ("Ascenda" or the "Company"), by and through its undersigned counsel, files this Verified Complaint against Defendant Perry Little.  In support thereof, Ascenda avers the following:

### *Nature of the Action*

1.     This is an action seeking both injunctive relief and money damages against Defendant Perry Little as a result of his breach of a non-competition agreement by obtaining employment with a company that competes with Ascenda and for the misappropriation of Ascenda's trade secrets in violation of the Delaware Uniform Trade Secrets Act, 6 *Del. C.* §2001-2009 ("DUTSA") and the non-competition agreement.

### *The Parties*

2.      Ascenda is a Delaware Limited Liability Corporation organized under the laws of the State of Delaware that was formerly known as Diagnostic Reference Group, LLC.

3.      Defendant Perry Little ("Mr. Little") is an individual who resides at 5710 Blair Valley Run, Cumming, Georgia 30040.  Mr. Little was the former Chief Operating Officer of Ascenda and had direct access to all of Ascenda's confidential and proprietary information about its business operations.

### *Jurisdiction*

4.      This Court has subject matter jurisdiction over the claims set forth herein pursuant to 10 *Del.C.* §§ 341 and 342 because Plaintiff's primary claims are equitable for which it seeks equitable relief, namely the issuance of injunctions.

5.      This Court has personal jurisdiction over Mr. Little based upon his express consent to the jurisdiction of this Court in the non-competition agreement that serves as the basis for Plaintiff's claims.

### *Background Facts*

6.      Ascenda was formed in June 2012 to provide polymerase chain reaction ("PCR") based laboratory testing on samples from healthcare providers throughout the United States and the world.  PCR testing is a technique used to

amplify trace amounts of DNA in a sample and, with a very high probability, identify the source of a pathogen.[1]

7.     Ascenda utilizes a unique formula for conducting PCR testing that derives significant independent economic value from its proprietary and confidential nature. The testing process is not generally known or readily ascertainable by others or to the public, which provides a competitive advantage over anyone else attempting to provide similar services.

8.     Ascenda has a legitimate business interest in its unique PCR testing process that has allowed it to develop substantial relationships with its existing clients, customer goodwill throughout the United States and parts of the world and develop similar relationships with prospective clients.

9.     Ascenda also has a legitimate business interest in the substantial relationships with prospective and/or existing customers, vendors, or clients, goodwill associated with customers or clients, and/or the extraordinary or specialized training provided to employees.  Ascenda's PCR testing process is a trade secret under the DUTSA.

10.    In 2015, Mr. Little was hired by Ascenda as the Company's Vice President and Director of Business Development.  As Vice President, he ran sales

---

[1]     As noted, the original name of the Company was Diagnostic Reference Group, LLC, which was formed in 2012.  The Company changed its name in 2017.  So to avoid any confusion, the Company will be referred to at all times in this Complaint as Ascenda.

of the PCR testing business to medical professionals, medical practices and individuals.  In his position, Mr. Little had direct access to confidential information and technology relating to Ascenda's proprietary laboratory testing process and its client base.

11.     On June 7, 2016, in furtherance of his employment, Mr. Little signed an Employee Non-Competition and Non-Solicitation Agreement ("Non-Compete Agreement").  Pursuant to the terms of the Non-Compete Agreement, Mr. Little agreed that for a period of one (1) year after his employment with the Company ended for any reason, he shall not, directly or indirectly, own, manage, operate or provide, as an officer, director, employee, consultant, owner, partner, or in any other capacity, any business which provides PCR based testing on the digestive system in areas where Ascenda was providing this testing or provides products and services which he was aware that Ascenda intended to do business.  Exhibit A.

12.     The Non-Compete Agreement also required that upon leaving the Company, Mr. Little shall return all documents, drawings, notes, memoranda, processes, specifications, devices, formulas, email, of any kind, together with all copies thereof, and any other material containing or disclosing company information, inventions and processes, third party information including client or customer information and/or proprietary information of the Company.  Exhibit A.

13.     Mr. Little was subsequently promoted to Chief Operating Officer in 2017, where he was the primary person responsible for the running of the PCR testing operations and the growth of the Company into other areas such as cancer testing and other work consistent with that of the position of Chief Operating Officer.

14.     During his time with Ascenda, Mr. Perry was not very computer savvy so he depended heavily upon his wife, Lynn, to perform many computer functions for his work.  She monitored Mr. Little's emails, created and submitted field status reports, reviewed documents he drafted, performed several other administrative functions on the computer to add to his productivity and was provided with access to confidential and proprietary Company information by Mr. Little.

15.     In 2019, when a new Chief Operating Officer was hired, Mr. Little was demoted back to Vice President and Director of Business Development.  In this position, Mr. Little was required, in addition to overseeing the entire sales force, to sell Ascenda's PCR testing to customers.  Later when Mr. Little could not manage the sales force, he was again demoted, this time to a member of the sales force. In this position, he directly sold the PCR testing to clients and medical professionals.

16.     During the course of his employment, Mr. Little was reprimanded on a number of occasions due to, among other things, his failure to complete various work assignments in a timely manner, presenting incomplete or incorrect work product and due to a significant decrease in the performance of his sales staff.

17.     On January 18, 2019, Mr. Little was provided with a Performance Improvement Period Notice that identified deficiencies in his work and provided expectations for improvement.  Exhibit B.  After Mr. Little failed to improve his performance and meet the Company's expectations, on October 4, 2019, he was terminated.

18.     As a gesture of kindness and appreciation for Mr. Little's work during the various downturns in the Company's business—*and despite his poor performance*—Ascenda offered him a severance.  Under the severance agreement proposed, Mr. Little would have been paid the equivalent of approximately one month of his prior salary.  The agreement also reiterated Mr. Little's obligations under the Non-Compete Agreement not to work for or with a competitor and to return, among other things, property, documents, and information of the Company.

19.     Mr. Little declined the severance agreement but conveyed to Ascenda that he was receptive to continuing to negotiate an acceptable agreement, and that he had engaged an economic expert to value the worth of his agreeing to the terms

in the severance agreement.  He later indicated that the estimated value was between $7,632,375.00 and $39,745,700.00.

20.    Ascenda was confounded by this off the wall valuation and response, especially considering Ascenda had no obligation to offer any severance and Mr. Little's annual salary, at its highest, was no more than one hundred eighty thousand dollars ($180,000.00).

21.    Ascenda believes that Mr. Little had retained confidential and proprietary information about the Company's testing procedures and protocols and was attempting to extort its return.  This is the only possible basis that an expert could have issued such a significant value on his signature on the severance agreement.

22.    Ascenda advised Mr. Little that the parties obviously viewed the intent of the severance agreement differently.  It reiterated that the purpose of the severance agreement was to express the Company's gratitude for Mr. Little's time with the Company.  Based on the counteroffer and the manner in which Mr. Little was using the severance agreement to extort money, Ascenda withdrew the severance offer.   Ascenda advised Mr. Little whether or not he signed the severance agreement, he was still obligated to the terms of the Non-Compete Agreement, specifically to return all Company property and information.  Ascenda

requested his assurance that he had complied with the Non-Compete Agreement and returned all documents and information in his possession or control.

23.     Mr. Little responded that he was unaware "of any contractual or legal obligation" to do so.  Ascenda viewed this as an attempt to avoid the responsibility to return, among other things, company property, documents and information, in his possession, specifically the information provided to the economic expert in calculating his estimated valuations.  Ascenda believes that Mr. Little has retained marketing materials, budgeting information, purchase orders, emails (including emails downloading Company information), weekly numbers (sales, production, revenue, expenses, spending, status of current affairs of the Company), third party information including client and customer information and/or proprietary information and several other documents that enabled him to do his job as the Chief Operating Officer and Vice President and Director of Business Development which were downloaded by his wife.

24.     In addition, to his refusal to return Company property, documents and information, on December 4, 2019, Mr. Little contacted Ascenda's current Vice President of Operations and asked her to provide a referral for a job he had applied for with GeneID Lab, Advanced Molecular Diagnostics ("GeneID").  GeneID is a government accredited, Molecular Testing Laboratory specializing in gene DNA sequencing.  It's testing searches for DNA mutations known to contribute to the

development of certain cancers, the very area Mr. Little knew was a target of Ascenda.

25.     Mr. Little requested the Vice President Operations withhold facts to his potential future employers if they ask by not telling them he was fired, his performance was poor or tell them Ascenda was on the verge of going out of business.

26.     Ascenda believes that Mr. Little has been hired by GeneID thereby breaching the terms of the Non-Compete Agreement.  His avoidance of Ascenda's request to confirm return of Company information and documents, his allowance of his wife to have access to and download Company information and the extremely large valuation issued by his expert demonstrates that Mr. Little has further breached the Non-Compete by retaining Company confidential and proprietary information, also a violation of the DUTSA, for which Ascenda does not have an adequate remedy at law.

## COUNT I
### (Injunctive Relief- Confidential and Propriety Information)

27.     Ascenda repeats and realleges the allegations set forth in Paragraphs 1-26 and incorporates the same by reference as if fully set forth herein.

28.     Mr. Little agreed to the Non-Compete Agreement.  Pursuant to the terms, he was required to return all Company Property in his possession and is prohibited from using any of this information regarding or relating to Ascenda's

laboratory testing process, its business model, or operations in the future.  Exhibit A.

29.    During the course of his employment, Mr. Little had access to and gave his wife access to Company information and documents to assist him in doing his work.  After he was terminated, he returned very few pieces of information.  Then when he was offered a severance, Mr. Little countered with an exorbitant valuation of his worth that could only be explained if he had taken confidential and proprietary information and was trying to sell it back to the Company. When asked to confirm he had returned all information and documents his response was "we are not aware of any contractual or legal obligation to supplement that production of documents and information".  This statement implies that Mr. Little does in fact have proprietary information within his possession and control.

30.    Mr. Little's actions demonstrate a clear violation of the terms of the Non-Compete.  Ascenda believes that Mr. Little has retained, among other things, such information and documents as marketing materials, budgeting information, purchase orders, emails (including emails downloading Company information), weekly numbers (sales, production, revenue, expenses, spending, status of current affairs of the Company), third party information including client and customer information and/or proprietary information and several other documents.

31.     Ascenda has suffered and will continue to suffer irreparable harm unless an injunction is entered to stop Mr. Little's wrongful conduct.

32.     Ascenda has no adequate remedy at law.    The Non-compete Agreement recognizes that a breach of the agreement will cause irreparable harm for which there is no adequate remedy at law.  Id.

## COUNT II
### (Injunctive Relief- Non-Compete)

33.     Ascenda repeats and realleges the allegations set forth in Paragraphs 1-32 and incorporates the same by reference as if fully set forth herein.

34.     The Non-Compete Agreement prohibits Mr. Little for a period of one (1) year after his termination from, directly or indirectly, working for a business which provides PCR based testing on the digestive system in areas where Ascenda was providing this testing at the time of his termination or provides products and services which he was aware that Ascenda intended to do business.

35.     On December 4, 2019, Mr. Little asked Ascenda's current Vice President of Operations to provide a referral for a job he had applied for with GeneID Lab, Advanced Molecular Diagnostics ("GeneID").   GeneID is a government accredited, Molecular Testing Laboratory specializing in gene DNA sequencing.  It's testing searches for DNA mutations known to contribute to the development of certain cancers, the very area Mr. Little knew was a target of Ascenda.

36.     Ascenda believes that Mr. Little has been hired by GeneID, likely as a salesperson, to sell the same or similar PCR testing he was aware that Ascenda planned to provide in the future.

37.     Ascenda has suffered and will continue to suffer irreparable harm unless an injunction is entered to stop Mr. Little's wrongful conduct.

38.     Ascenda has no adequate remedy at law.   The Non-compete Agreement recognizes that a breach of the agreement will cause irreparable harm for which there is no adequate remedy at law.

## COUNT III
### (Misappropriation of Trade Secrets)

39.     Ascenda repeats and realleges the allegations set forth in Paragraphs 1-38 and incorporates the same by reference as if fully set forth herein.

40.     Mr. Little, and his wife, had access to confidential and proprietary information while he was employed by Ascenda.  This information, based upon its nature and Ascenda's attempts to limits its exposure, constitutes trade secrets under the DUTSA.

41.     Ascenda made reasonable efforts to maintain the privacy and secrecy of the information by, among other things, including provisions in terms in the Non-Compete Agreements that required Mr. Little, and other employees, to return all Company information and documents in his possession or in the possession of

third parties upon his termination and he agreed not to use any such information in the future.

42.    Ascenda's trade secrets have independent economic value that could not have been generated or developed absent substantial effort, expense and time. The critical core of the information was not something that Mr. Little created or possessed the knowledge or ability to create therefore it would not be within his personal knowledge and/or talents.

43.    Mr. Little misappropriated Ascenda's trade secrets by willfully and maliciously stealing them and agreeing to return this information as a part of the Non-Compete Agreement but failing to do so.  It is evident in his dogmatic contentions that a severance of somewhere between $7,632,375.00 and $39,745,700.00 was appropriate, that Mr. Little was attempting to misappropriate Ascenda's confidential and proprietary information by selling it for a profit.  Mr. Little has done so with the knowledge that Ascenda has not consented to the release or utilization of the information.  Ascenda has taken reasonable efforts to maintain the privacy and secrecy of the information by, among other things, including provisions in the Non-Compete Agreement that required the return of the information.

44.    As a result of Mr. Little's wrongful conduct, Ascenda has suffered pecuniary losses in an amount to be determined at trial and/or Mr. Little has been unjustly enriched by the misappropriation of the information.

**WHEREFORE**, Plaintiff Ascenda Biosciences, LLC respectfully requests that the Court grant the following relief:

A.    Permanent Injunctive Relief barring Defendant Perry Little from working for, in any way, GeneID Lab, Advanced Molecular Diagnostics or any other entity operate a business that provides PCR testing in competition with Ascenda for a period of one (1) year from the date of the order;

B.    Defendant Perry Little be ordered to immediately return all documents, data, correspondence or information, stored upon electronic media or other means, in his possession, custody or control or that were given to third parties such as his wife Lynn Little and sign an affidavit subject to the jurisdiction of this Court indicating such;

C.    Permanent Injunctive Relief barring Defendant Perry Little from using, sharing, disclosing or rely upon in any way, upon confidential and proprietary information belonging to Ascenda consisting of trade secrets, procedures, methods, processes, protocols, sequences, ideas, data, customer information and information concerning Ascenda's technical information,

strategies, testing, protocols, procedures,  development and other data relating to its PCR laboratory testing process;

D.     That Defendant Perry Little be barred from posting, advertising, distributing and/or selling information, knowledge, technology or testing protocols misappropriated from Ascenda;

E.     That the Court enter an award of compensatory damages in favor of Ascenda and against Defendant Perry Little in an amount to be determined at trial for violating the Delaware Uniform Trade Secrets Act;

F.     That the Court award Ascenda exemplary damages pursuant to the Delaware Uniform Trade Secrets Act, 6 Del. C. § 2001, et seq.;

G.     That the Court award Ascenda their costs and expenses, pre-judgment and post-judgment interest, and attorneys' fees in the prosecution of this case; and

H.     That the Court awards such other and further relief as it deems just and equitable.

MOORE AND RUTT, P.A.

/s/ Scott G. Wilcox
Scott G. Wilcox, Esq. (DE ID 3882)
The Mill
1007 North Orange Street, Suite 446
Wilmington, DE 19801
Telephone: 302.463.7537
swilcox@mooreandrutt.com

Dated:  January 17, 2020                 *Attorneys for Plaintiff Ascenda BioSciences, LLC*

**EFiled:  Jan 17 2020 04:04PM EST**
**Transaction ID 64635618**
**Case No. 2020-0035-**

# EXHIBIT A

**DIAGNOSTIC REFERENCE GROUP LLC/DBA DRG Laboratory**

**EMPLOYEE NON-COMPETITION AND NON-SOLICITATION AGREEMENT**

In consideration of employment by Diagnostic Reference Group LLC, a Delaware limited liability company, (together, the "Company"), the compensation now and hereafter paid to me, I hereby enter into this Non-Competition and Non-Solicitation Agreement (the "Agreement") and agree as follows:

1. **NO SOLICITATION OF EMPLOYEES, CONSULTANTS, CONTRACTORS, OR CUSTOMERS OR POTENTIAL CUSTOMERS**. . I agree that during my employment and for one (1) years after my employment ends for any reason, I will not, as an officer, director, employee, consultant, owner, partner, or in any other capacity for any other entity, either directly or indirectly:

   1. solicits, induce, encourage, or attempted to solicit, induce, or encourage, any person employed by the Company in any capacity (including and without limitation, as an employee, consultant or independent contractor), to terminate their relationship with the Company;

   2. attempt to hire, employ or engage, any person who was employed by the Company within the six (6) months preceding the end of my employment, to provide Conflicting Services;

   3. solicit, induce or attempt to solicit or induce any contractor or consultant with whom I had any contact with during my employment, to terminate, diminish, or materially alter in a manner its relationship with the Company; or

   4. solicit, induce or attempt to solicit or induce any Customer or Potential Customer of the Company to terminate, diminish, or materially alter in a manner its relationship with the Company.

   A "Customer or Potential Customer" is any person or entity that, prior to the date of my termination of employment with the Company, (i) received products and/or services from the Company during my employment, (ii) was in contact with me concerning any product or service of the Company or about which I acquired Proprietary Information from during my employment; or (iii) contacted or was contacted and/or solicited by me or by the Company, for which I was aware, regarding potential business or in forming a new or different business.

   This restriction does not apply to unsolicited contact from an employee, former employee, Company, Customer or Potential Customer.

2. **NON-COMPETE PROVISION**. I agree that for a one (1) year period after my employment with the Company ends for any reason, that I shall not, directly or indirectly, own, manage, operate or provide, as an officer, director, employee, consultant, owner, partner, or in any other capacity, any business which provides polymerase chain reaction ("PCR") based testing on the digestive system in the national or international states, countries or regions in which the Company was doing business or providing products or services as of the date of my termination and which I was aware the Company intended to do business within six (6) months after to my termination.

This restriction in no way shall limit my ability to seek and obtain any employment after my termination as long as it does not involve business which is similar to the business conducted by the Company. The parties agree that for purposes of this Agreement, the business of the Company includes providing any product or service that is substantially similar to those offered by the Company during my employment, which I was aware that the Company intended to offer within six (6) months of my termination or about which I acquired Proprietary Information during my employment with the Company.

3. **REASONABLENESS OF RESTRICTIONS**.

   1. I agree that I have read this entire Agreement and understand it. I agree that this Agreement does not prevent me from earning a living or pursuing my career. I agree that the restrictions contained in this Agreement are reasonable, proper, and necessitated by the Company's legitimate business interests. I represent and agree that I am entering into this Agreement freely and with knowledge of its contents with the intent to be bound by the Agreement and the restrictions contained in it.

   2. In the event that a court finds this Agreement, or any of its restrictions, to be ambiguous, unenforceable, or invalid, I and the Company agree that the court shall read the Agreement as a whole and interpret the restriction(s) at issue to be enforceable and valid to the maximum extent allowed by law. Both the Company and I agree to be bound by the interpretation of the court.

   3. Furthermore, the parties agree that the market for the Company's products and services is national and international. If, however, after applying the provisions of subsections 3.2 and 3.3, a court still decides that this Agreement or any restriction is unenforceable for lack of reasonable limitation and the Agreement or restriction(s) cannot be enforced, the parties agree that then, and only then, the restriction of a one hundred (100) mile radius from the location which I worked for the Company regularly during the one (1) year immediately preceding termination of

my employment with the Company shall be the geographic limitation relevant to the contested restriction for a one (1) year period.

4. **RETURN OF COMPANY PROPERTY**. When I leave the Company, I will deliver any and all documents, drawings, notes, memoranda, processes, specifications, devices, formulas, email, of any kind, together with all copies thereof, and any other material containing or disclosing company information, inventions and processes, third party information include client or customer information and/or proprietary information of the Company. I agree that property situated on the Company's premises and on its computers, including emails, drives and other storage media and filing cabinets or other work areas, is the Company's property and is subject to inspection by the Company at any time without notice. Prior to leaving, I will cooperate with the Company in completing and signing the Company's termination statement if requested to do so.

5. **LEGAL AND EQUITABLE REMEDIES**.

   1. I agree it may be impossible to assess damages caused by a violation of this Agreement or any of its terms. I agree any threatened or actual violation of this Agreement or any term will constitute immediate and irreparable injury to the Company and it shall have the right to enforce this Agreement and any of its provisions by injunction, specific performance or other equitable relief, without bond and without prejudice to any other rights and remedies that the Company may have for a breach or threatened breach of this Agreement.

   2. I agree that if the Company is successful in whole or part in any legal or equitable action against me under this Agreement, they shall be entitled to payment of all reasonable costs, including attorney's fees, from me as determined by the court. If you breach the covenants set forth in Sections 1 and/or 2, the running of the one (1) year restrictions described therein shall be tolled for so long as such breach continues.

6. **NOTICES**. Any notices required or permitted hereunder shall be given to the appropriate party at the address specified below or at such other address as the party shall specify in writing. Such notice shall be deemed given upon personal delivery to the appropriate address or if sent by certified or registered mail, five (5) days after the date of mailing.

7. **GENERAL PROVISIONS**.

   1. **Governing Law; Consent to Personal Jurisdiction**. This Agreement will be governed by and construed according to the laws of the State of Delaware as such laws are applied to agreements entered into and to be performed entirely within Delaware. I hereby expressly consent to the

personal jurisdiction and venue of the state and federal courts located in Delaware for any lawsuit filed there against me by the Company arising from or related to this Agreement.

2. **Severability**. In case any provision, subsection, or sentence contained in this Agreement shall be held to be unenforceable, such invalidity, illegality or unenforceability shall not affect the other provisions of this Agreement, and this Agreement shall be construed as if such provision had never been contained herein. If moreover, any one or more of the provisions contained in this Agreement shall for any reason be held to be excessively broad as to duration, geographical scope, activity or subject, it shall be construed by limiting and reducing it, so as to be enforceable to the extent compatible with the applicable law as it shall then appear.

3. **Successors and Assigns**. This Agreement is for my benefit and the Company, its successors, and assigns, and will be binding upon my heirs, executors, administrators and other legal representatives.

4. **Survival**. The provisions of this Agreement shall survive the termination of my employment, regardless of reason, and the assignment of this Agreement by the Company to any successor or other assignee.

5. **Waiver**. No waiver by the Company of any breach of this Agreement shall be a waiver of any preceding or succeeding breach. No waiver by the Company of any right under this Agreement shall be construed as a waiver of any other right. The Company shall not be required to give notice to enforce strict adherence to all terms of this Agreement.

6. **Advice of Counsel**. **I ACKNOWLEDGE I AM VOLUNTARILY ENTERING INTO THIS AGREEMENT AND, I HAVE HAD THE OPPORTUNITY TO SEEK THE ADVICE OF LEGAL COUNSEL, AND I HAVE READ AND UNDERSTOOD ALL OF THE TERMS AND PROVISIONS OF THIS AGREEMENT. THIS AGREEMENT SHALL NOT BE CONSTRUED AGAINST ANY PARTY BY REASON OF THE DRAFTING OR PREPARATION HEREOF**.

7. **Entire Agreement**. This Agreement is the final, complete and exclusive agreement of the parties with respect to the subject matter hereof and supersedes and merges all prior discussions between us. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing and signed by all parties. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement. This Agreement shall be effective on the day it is signed.

**(Signature Page to Follow)**

**I HAVE READ THIS AGREEMENT CAREFULLY AND UNDERSTAND AGREE TO ITS TERMS**.

Employee

Perry Little

Dated: 06/07/2016

Diagnostic Reference Group LLC

By

Name   Karen C Stout
Title   President/CFO

**EFiled:  Jan 17 2020 04:04PM EST**
**Transaction ID 64635618**
**Case No. 2020-0035-**

# EXHIBIT B

     **PERFORMANCE IMPROVEMENT PERIOD NOTICE**

January 18, 2019

**Perry Little**
5710 Blair Valley Run
Cumming, GA 30040

During the past six months, we have had several discussions concerning your work assignments and the performance of your duties. In particular, you have been unable to complete work assignments on time, and the performance of your department had decrease significantly. work product has often been either incomplete or incorrect. We have also discussed recent communication problems, including your inability to provide me with an accurate picture of your progress and misunderstandings about your assignments, and the lack of communication and tracking of the performance of your direct reports. Thus, you have failed to demonstrate satisfactory performance expected for an employee at your grade level.

The purpose of this Performance Improvement Notice is to define serious areas of concern, gaps in your work performance, reiterate **Ascenda BioSciences** expectations, and allow you the opportunity to demonstrate improvement and commitment.

**Areas of Concern:**
- *Industry Required Knowledge:* There had been notifications from Customers, direct reports and co-workers of lack of knowledge and understating of industry terminology. Same notifications received in regards of product knowledge. This is required to improve immediately in order to properly train personnel and keep high standards of company representation.
- *Management Skills:* new hire decision making, effectively training direct reports, effectively keep track and records for direct report performance, proactiveness and immediate response for corrective actions and/or prevent situations within Sales Division.
- *Analytical Skills:* ability to evaluate and analyze data and interpret to provide input and decision making.
- *Communication Skills:* ability to effectively communicate within all levels of organization and customers; keep management informed of tasks, projects and/or needs, improvement of written communications. Follow proper chain of command with immediate Supervisor and ensure direct reports follow the same.

pll



**Improvement Goals and Expectations:**

- Effectively monitor performance on a weekly basis and prepare reports regarding market and direct report performance
- Provide a quarterly plan that includes calendar, tasks and plans to be approved by Executive team
- Increase specimen monthly count to 300 per month
- Monitor Account activity and follow up with Sales Rep

**Timeline for Improvement, Consequences & Expectations:**

In order to correct the deficiencies in your performance are placed on a 60-day Performance Improvement Notice. During this time, you will be expected to make regular progress on the plan outlined above. Failure to meet or exceed these expectations, or any display of gross misconduct will result in further disciplinary action, up to and including termination. In addition, if there is no significant improvement to indicate that the expectations and goals will be met within the timeline indicated in this Performance Improvement Notice, your employment may be terminated prior to 60-days. In addition, failure to sustain a satisfactory level of performance for at least one year from the start of this 60-day period may result in additional disciplinary action up to and including recommending your removal without an additional opportunity period.

This Performance Improvement Notice does not alter the employment-at-will relationship. Additionally, the contents of this Performance Improvement Notice are to remain confidential. Should you have any questions concerning this notice, I am available to discuss them with you. Please sign and date the acknowledgement below and return to HR at: hr@ascendabio.com

**Signatures:**

*Justin M Cole*

Justin Cole -President, CEO

| ACKNOWLEDGE SIGNATURE | |
|---|---|
| Accepted: | |
| Date: | 01/24/2019 |

2001 Westside Parkway Suite 240
Alpharetta, GA 30004
(687) 580-0613
www.ascendabio.com

# Signature Certificate

🔒 Document Reference:   KI3XRDJNY3M4N2ELE4UD9D



Easy Online Document Signing



**Perry Little**
Party ID: NYU92MJIC5VF93ZK5XCYBK
IP Address: 174.218.135.82

| VERIFIED EMAIL: | perry.little@ascendabio.com



Multi-Factor
**Digital Fingerprint Checksum**   `9d9a519fddbbb1705b8cb4b0b09e9160a89d22e7`

| **Timestamp** | **Audit** |
|---|---|
| 2019-01-24 10:58:42 -0800 | All parties have signed document. Signed copies sent to: Perry Little and HR Department. |
| 2019-01-24 10:58:42 -0800 | Document signed by Perry Little (perry.little@ascendabio.com) with drawn signature. - 73.43.84.232 |
| 2019-01-24 08:22:28 -0800 | Document viewed by Perry Little (perry.little@ascendabio.com). - 174.218.135.82 |
| 2019-01-24 06:17:52 -0800 | Document created by HR Department (hr@thestrategicgroup.org). - 173.243.83.82 |



This signature page provides a record of the online activity executing this contract.

**Page 1 of 1**

**EFiled: Jan 17 2020 04:04PM EST**
**Transaction ID 64635618**
**Case No. 2020-0035-**

## VERIFICATION OF COMPLAINT FOR INJUNCTIVE RELIEF

I, Karen C. Stout, being duly sworn, hereby states under oath that I am the

Vice President of Operations for Plaintiff Ascenda Biosciences, LLC and I have

reviewed the Verified Complaint for Injunctive Relief and believe, to the best of my

knowledge, information and belief, the matters set forth therein are true and correct.


Dated: _____     _____
                                                    Karen C. Stout


Sworn to before me in my presence:              Mara Ceko
                                                            NOTARY PUBLIC
This __17__ day of January, 2020          Forsyth County, GEORGIA
                                                   My Commission Expires 3-30-22

_____
Notary Public

EFiled:  Jan 23 2020 03:12PM EST
Transaction ID 64651731
Case No. 2020-0035-KSJM

## MOORE & RUTT, P.A.
ATTORNEYS AT LAW

MILFORD OFFICE
P.O. BOX 612
830 S. DUPONT BLVD.
MILFORD, DE 19963
(302) 424-2240 FAX (302) 424-0468
(Wed. & Thurs. By Appointment)

GEORGETOWN OFFICE
P.O. BOX 554
122 W. MARKET STREET
GEORGETOWN, DE 19947
(302) 856-9568
FAX: (302) 856-4518

WILMINGTON OFFICE
1007 NORTH ORANGE STREET
SUITE 446
WILMINGTON, DE 19801
(302) 463-7537
FAX: (302) 856-4518

J. EVERETT MOORE JR*
DAVID N. RUTT**
SCOTT G. WILCOX
JAMES P. SHARP***
DORIAN ROWE KLEINSTUBER
RYAN T. ADAMS
ANNE L. BARNETT

* DE and DC
** DE and PA
*** DE and MD

Reply To _X_ Georgetown
__ Milford
__ Wilmington

January 23, 2020

Register in Chancery
Court of Chancery Court
State of Delaware
500 North King Street
Wilmington, DE  19801

Re:   Ascenda BioSciences LLC v. Perry Little
       Case No.:  2020-0035

Dear Register in Chancery:

This firm represents Plaintiff, Asenda BioSciences LLC in the above-captioned case.  Plaintiff requests that a summons be issued to the Plaintiff to serve Defendant pursuant to Delaware's Long Arm Statute (10 Del. C. §3104) at the following via Certified Mail – Return Receipt Requested:

Defendant Perry Little
5710 Blair Valley Run
Cumming, Georgia 30040

I am available at the call of the Court to address any matters.

Respectfully submitted,

/s/ Scott G. Wilcox

Scott G. Wilcox (#3882)
*Words: 209*

EFiled:  Jan 30 2020 12:12PM EST
Transaction ID 64653785
Case No. 2020-0035-KSJM

## MOORE & RUTT, P.A.
ATTORNEYS AT LAW

MILFORD OFFICE
P.O. BOX 612
830 S. DUPONT BLVD.
MILFORD, DE 19963
(302) 424-2240 FAX (302) 424-0468
(Wed. & Thurs. & By Appointment)

GEORGETOWN OFFICE
P.O. BOX 554
122 W. MARKET STREET
GEORGETOWN, DE 19947
(302) 856-9568
FAX: (302) 856-4518

WILMINGTON OFFICE
1007 NORTH ORANGE STREET
SUITE 446
WILMINGTON, DE 19801
(302) 463-7537
FAX: (302) 856-4518

J. EVERETT MOORE JR*
DAVID N. RUTT**
SCOTT G. WILCOX
JAMES P. SHARP***
DORIAN ROWE KLEINSTUBER
RYAN T. ADAMS
ANNE L. BARNETT

* DE and DC
** DE and PA
*** DE and MD

Reply To _X_ Georgetown
___ Milford
___ Wilmington

January 23, 2020

*1/30/20- issued (.) 3104
summons to this firm
(1 copy)*

Register in Chancery
Court of Chancery Court
State of Delaware
500 North King Street
Wilmington, DE 19801

Re:   Ascenda BioSciences LLC v. Perry Little
      Case No.:  2020-0035 - *KSJM*

Dear Register in Chancery:

This firm represents Plaintiff, Asenda BioSciences LLC in the above-

captioned case.  Plaintiff requests that a summons be issued to the Plaintiff to serve

Defendant pursuant to Delaware's Long Arm Statute (10 Del. C. §3104) at the

following via Certified Mail – Return Receipt Requested:

> Defendant Perry Little
> 5710 Blair Valley Run
> Cumming, Georgia 30040



I am available at the call of the Court to address any matters.

Respectfully submitted,

/s/ Scott G. Wilcox

Scott G. Wilcox (#3882)
*Words:  209*

EFiled:  Jan 17 2020 04:04PM EST
Transaction ID 64635618
Case No. 2020-0035-

## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| **ASCENDA BIOSCIENCES LLC,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **C.A. No.** |
| | ) | |
| **PERRY LITTLE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF



## IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

ASCENDA BIOSCIENCES LLC,                          )
                        Plaintiff,          )   C.A. No. 2020-0035-KSJM
                                        )
                                        )   SUMMONS
v.                                                )   Pursuant to 10 Del.C. Sec. 3104
                                        )
PERRY LITTLE,                                     )
                                        )
                         Defendant.         )

**THE STATE OF DELAWARE**

**TO:   MOORE & RUTT, P.A.:**

**YOU ARE COMMANDED:**

      To summon the above named defendants so that, within 20 days after service hereof upon defendants, exclusive of the day of service, defendants shall serve upon Scott G. Wilcox, Esquire, Plaintiff's counsel, whose address is Moore & Rutt, P.A., 1007 North Orange Street, Suite 446, Wilmington, Delaware 19801, an answer to the verified complaint.

To serve upon defendants a copy hereof and of the complaint.

**TO THE ABOVE NAMED DEFENDANTS:**

      In case of your failure, within 20 days after service hereof upon you, exclusive of the day of service, to serve on plaintiff's attorney named above an answer to the complaint, judgment by default will be rendered against you for the relief demanded in the complaint.

Dated:      January 30, 2020

                                            _____
                                            Register in Chancery

**C.A. # 2020-0035-KSJM**

ASCENDA BIOSCIENCES LLC,

Plaintiff,

v.

PERRY LITTLE,

Defendant.

**SUMMONS**

Please effectuate service upon:

1.    **Perry Little**
    5710 Blair Valley Run
    Cumming, Georgia 30040

Pursuant to 10 <u>Del.C.</u> Sec. 3104

SERVICE TO BE COMPLETED BY MOORE & RUTT, P.A. -
Via Certified Mail -- Return Receipt Requested

<u>Scott G. Wilcox, Esquire</u>
Plaintiff's Counsel